IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-00793-L |
| | § | |
| RHINO READY MIX TRUCKING, | § | |
| INC., JOSE ARAMBULA; and | § | |
| FREDDY AMAYA, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Jose Arambula's Rule 60(b)(4) Motion to Vacate (ECF No. 17), in which he seeks relief from a default judgment entered against him in this case on October 3, 2019 (ECF No. 14). The District Judge referred the Motion to Vacate to the United States Magistrate Judge for a recommendation or determination (ECF No. 19). For the reasons explained below, the Magistrate Judge recommends that the District Court **DENY** the Motion to Vacate.

**Background**

This litigation arises out of a series of loan agreements between non-party GE Capital Corp. ("GE Capital"), later acquired by Plaintiff BMO Harris Bank N.A. ("BMO"), and Defendant Rhino Ready Mix Trucking, Inc. ("Rhino"). Defendants Jose Arambula and Freddy Amaya personally guaranteed the loans

1

by executing Continuing Guaranties, whereby Arambula and Amaya agreed to pay all of Rhino's past and future liabilities to GE Capital—and later BMO—in the event of a default. *See* Compl. 2–3 (ECF No. 1).

In 2014, Rhino entered into a loan agreement with GE Capital, under which GE Capital agreed to finance Rhino's purchase of certain equipment for use in Rhino's business. *See id.* at 2 (ECF No. 1). On the same day, Arambula executed a Continuing Guaranty, in which Arambula personally guaranteed that Rhino would pay all of its "present and future liabilities[,] obligations[,] and indebtedness to GE Capital" (defined to include GE Capital's "respective affiliates, together with the respective successors, endorsees, and assigns"). *See id.* at Ex. B (ECF No. 1-3). The Continuing Guaranty included a forum selection clause providing that "Guarantor agrees that GE Capital may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which GE Capital's office administering the Indebtedness is located." *Id.* (ECF No. 1-3). The office administering the Indebtedness is in Irving, Texas. *See id.* at Ex. A (ECF No. 1-2).

The following year, BMO acquired certain operations of GE Capital, including all of GE Capital's accounts associated with Rhino, the 2014 loan agreement, and Arambula's 2014 Continuing Guaranty. *See id.* at Ex. C (ECF No. 1-4). After that, Rhino went on to execute three more loan agreements with BMO, which were personally guaranteed by Defendant Freddy Amaya. *See id.* at 4 (ECF

2

No. 1). After the BMO acquisition, the office administering the Indebtedness remained in Irving, Texas, at the same address. *See, e.g., id.* at Exs. A & D (ECF Nos. 1-2 & 1-5). In 2018, Rhino defaulted on its loans, and BMO sued Rhino, Arambula, and Amaya for breach of contract, seeking to hold Arambula and Amaya personally responsible for Rhino's debts under the Continuing Guaranties. *See generally id.* (ECF No. 1).

However, later in 2018, Rhino and Amaya both initiated Chapter 7 bankruptcy proceedings, *see* Am. Mot. for Default J. 1 n.1 (ECF No. 12), and Arambula failed to answer or respond to BMO's Complaint. In light of the bankruptcy proceedings and Arambula's failure to appear, BMO moved for default judgment against Arambula only, which the District Judge granted in early 2019. *See* Order (ECF No. 14).

Arambula, averring that he did not learn of the default judgment against him until early 2023, now moves to vacate that default judgment under Rule 60(b)(4), on the grounds that the judgment is void due to a lack of personal jurisdiction. *See* Mot. to Vacate 3 (ECF No. 17).

**Legal Standard**

Under Rule 60(b)(4), a court may grant relief from a final judgment, order, or proceeding if the judgment is void. Fed. R. Civ. P. 60(b)(4). A judgment may be set aside under Rule 60(b)(4) in two circumstances: "1) if the initial court lacked subject matter or personal jurisdiction; and 2) if the district court acted in

a manner inconsistent with due process of law." *Callon Petrol. Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003). A party does not waive its right to contest personal jurisdiction under Rule 60(b)(4) by failing to appear in the litigation prior to the entry of the default judgment. *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002).

## Analysis

Arambula argues that the default judgment entered against him in 2019 is void because the Court did not have personal jurisdiction over him. *See* Mot. to Vacate 3–4 (ECF No. 17). Specifically, he argues that the Continuing Guaranty he signed in 2014, which included a forum selection clause establishing Texas[1] as the proper forum for this litigation, does not hold him responsible for the debt between Rhino and BMO at the center of this case. *See id.* at 4–5 (ECF No. 17); Def.'s Reply 2–3 (ECF No. 26). Arambula contends that in the absence of an enforceable forum selection clause, he has insufficient contacts with Texas to warrant the exercise of personal jurisdiction here. In response, BMO argues that personal jurisdiction is proper because the 2014 Continuing Guaranty by its plain text applies to Rhino's later debts with BMO as GE Capital's successor, and

---

[1] The Continuing Guaranty selects as the proper forum "any court in the State in which GE Capital's office administering Indebtedness is located," which is Texas. The Irving, Texas address appears on the signature page of each of the individual loan and security agreements. *See, e.g.*, Compl. at Ex. D (ECF No. 1-5).

therefore that the choice of forum clause in the Continuing Guaranty is controlling. *See* Pl.'s Resp. 6 (ECF No. 24).

The Court should first consider the applicability of the Continuing Guaranty to BMO's claims against Arambula in this litigation, and then address the validity of the forum selection clause in the Continuing Guaranty.

A. <u>The Continuing Guaranty holds Arambula responsible for Rhino's debt to BMO.</u>

Under Texas law, "[a] continuing guaranty is not confined to a particular transaction, but rather contemplates a future course of dealing." *Fed. Deposit Ins. Corp. v. Woolard*, 889 F.2d 1477, 1479 (5th Cir. 1989) (citing *Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 553 (Tex. App.—Dallas 1968, no writ). "It is prospective in its operation and is generally intended to provide security with respect to future transactions, within certain limits, and contemplates a succession of liabilities, for which, as they accrue, the guarantor becomes liable." *Blount*, 432 S.W.2d at 553 (quoting 38A C.J.S. Guaranty § 9). The law distinguishes between continuing guarantees and specific guarantees, which apply only to one particular transaction or loan. *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 277 (5th Cir. 1991). A successor in interest who acquires a loan secured by a continuing guaranty may sue the guarantor to enforce the guaranty. *See id.* at 278.

Here, it is undisputed that Arambula signed a continuing guaranty that anticipated a future course of dealing between Rhino, GE Capital, and their

5

respective successors. The document is conspicuously titled "Continuing Guaranty," and by its plain terms promises that Arambula will pay all of Rhino's "present *and future* liabilities, obligations, and indebtedness" to GE Capital. Compl. at Ex. B (emphasis added) (ECF No. 1-3). The agreement explicitly defines both Rhino and GE Capital to include their respective successors, endorsees, and assigns. *Id.* (ECF No. 1-3). "GE Capital" is itself a defined term that expressly includes "GENERAL ELECTRIC CAPITAL CORPORATION, GE CAPITAL COMMERCIAL INC., GE TF TRUST and GE CF TRUST and their respective affiliates, together with the respective successors, endorsees and assigns of each of the foregoing." *Id.* (ECF No. 1-3). Although Arambula argues in his briefing that the Continuing Guaranty's "use of 'assigns' does not implicate future, separate lenders," he does not provide any authority under Texas law or otherwise to support the proposition that BMO, with its status as GE Capital's successor, cannot enforce the Continuing Guaranty. *See* Def.'s Reply 3 (ECF No. 26). Indeed, the Continuing Guaranty is unambiguous that it applies to Rhino's present and future liabilities to GE Capital and its successors. *See* Compl. at Ex. B (ECF No. 1-3). As GE Capital's successor, BMO is entitled to enforce the Continuing Guaranty. *See Resolution Trust Corp.*, 939 F.2d at 278.

And BMO's later loans to Rhino that were personally guaranteed by Defendant Amaya do not release Arambula from his obligations under the 2014 Continuing Guaranty, as Arambula argues. *See* Mot. to Vacate 4–5 (ECF No. 17).

6

To the contrary, the Continuing Guaranty states that "no termination hereof shall be effective until the Guarantors deliver to GE Capital a written notice signed by them electing not to guarantee any new extension of credit." Compl. at Ex. B (ECF No. 1-3). Without explicit language in Amaya's later guaranties indicating that they were meant to supersede Arambula's 2014 Continuing Guaranty, Arambula's obligations remain in full force. *See Fin. Fed. Credit Inc. v. Curtis Excavating LLC*, 2009 WL 7326377, *4 (S.D. Tex. Aug. 17, 2009) ("Defendants have not revoked or terminated the 2003 Guaranties. As Plaintiff points out, nothing on the face of the 2003 Guaranties suggests that they apply to a single transaction. Further, there is no language in the 2007 Guaranties indicating that they are meant to supersede the 2003 Guaranties. The Court therefore finds that, as a matter of law, the 2003 Guaranties are still in force and apply to [debtor's] obligations under the Note.").

The Court should therefore conclude that the 2014 Continuing Guaranty requires Arambula to bear responsibility for Rhino's debts to BMO.

> B. <u>Because the Continuing Guaranty holds Arambula responsible for Rhino's debt to BMO, the forum selection clause allows personal jurisdiction over Arambula in this case.</u>

As the Continuing Guaranty holds Arambula responsible for Rhino's debt to BMO, the forum selection clause applies, selecting Texas as the proper forum for this action. In the Fifth Circuit, a valid forum selection clause creates personal jurisdiction over the parties. *Kevlin Servs., Inc. v. Lex. State Bank*, 46 F.3d 13,

14–15 (5th Cir. 1995). "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Id.* at 15. To overcome this presumption, the party seeking to avoid enforcement must show the clause is unreasonable because (1) it was the product of fraud or overreaching; (2) enforcement would be gravely inconvenient; (3) the law of the chosen forum will deprive the party of a remedy; or (4) enforcement would be against public policy. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 773 (5th Cir. 2016). A valid forum selection clause is enough to confer personal jurisdiction without the existence of minimum contacts. *See Kevlin Servs., Inc.*, 46 F.3d at 15; *USHEALTH Adv., LLC v. Broussard*, 2019 WL 9103426, at *2 (N.D. Tex. Dec. 2, 2019).

    Here, Arambula does not argue that the forum selection clause is unreasonable due to fraud, public policy, grave inconvenience, or unfairness. Instead, he argues that the clause in the Continuing Guaranty does not constitute his consent to personal jurisdiction in Texas because it "simply generically states that GE Capital can sue anywhere that GE Capital is administering the Indebtedness" and "there is no reference to Texas anywhere on the Guaranty." *See* Def.'s Reply 5 (ECF No. 26).

    While Arambula is correct that the Guaranty does not specify Texas as the proper forum, it was apparent that the office administering the Indebtedness was located in Texas—the address appears beneath the lender's signature on the final

8

page of the 2014 loan agreement, next to Arambula's signature as Rhino's president. *See* Compl. at Ex. A, p. 5 (ECF No. 1-2); *see also Carter v. Countrywide Credit Ind., Inc.*, 362 F.3d 294, 299–300 (5th Cir. 2004) (enforcing forum selection clause selecting the forum as "within the Federal Judicial District in which Employee was last employed with the Company"). A forum selection clause also does not need to explicitly reference or waive personal jurisdiction to validly confer personal jurisdiction over a defendant. *See, e.g., Kevlin Servs., Inc.*, 46 F.3d at 14–15 (holding that a choice of forum provision stating that "[t]he legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas" would properly subject the defendant to personal jurisdiction). In any event, Arambula has not provided authority to support these arguments. Without more, the Court should find no reason to depart from the presumption that this forum selection clause is enforceable, and conclude that the exercise of personal jurisdiction over Arambula was proper.

## Recommendation

The Court should **DENY** the 60(b)(4) Motion to Vacate and hold that the default judgment was valid because personal jurisdiction over Arambula in this Court was proper.

**SO RECOMMENDED.**

October 23, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved part from appealing the factual findings and legal conclusion of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n.* 79 F.3d 1415, 1417 (5th Cir. 1996).